2001-NMCA-044

28 P.3d 1114

**Robert GORDON, Plaintiff–Appellee,**

v.

**SANDOVAL COUNTY ASSESSOR, Defendant–Appellant.**

No. 21,400.

Court of Appeals of New Mexico.

May 25, 2001.

574

Hessel E. Yntema, III, Oman Yntema & Lucero P.A., Albuquerque, NM, for Appellee.

Walter M. Hart, III, Sandoval County Attorney, Bernalillo, NM, for Appellant.

## OPINION

PICKARD, Judge.

{1} This case lies at the intersection of the general rule of confidentiality contained in the tax administration acts and the general policy favoring openness of government and disclosure of public records. The statute specifically at issue is NMSA 1978, § 7–38–19 (1991), which provides:

D. Except as provided otherwise in Subsection E of this section, valuation records are public records.

E. Valuation records that contain information regarding the income, expenses other than depreciation, profits or losses associated with a specific property or a property owner or that contain diagrams or other depictions of the interior arrangement of buildings, alarm systems or electrical or plumbing systems are not public records and may be released only in accordance with Paragraphs (2) through (7) of Subsection A of [NMSA 1978,] Section 7–38–4 [ (1991) ].

The Assessor takes the position that all information it keeps on uniform property record cards promulgated by the State Taxation and Revenue Department is confidential because it sometimes keeps information on these cards that falls within the information listed in Section 7–38–19(E). The district court disagreed and required the Assessor to make its record cards available to Plaintiff with any confidential material redacted. We agree with the district court's decision, and we therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

{2} Plaintiff is a taxpayer who is involved in protesting various property tax valuations. He wrote to the Assessor, requesting photocopies of the property record cards for nine properties on the north side of a certain street. The Assessor wrote back, claiming that the cards were exempt from disclosure based on the general rule of confidentiality of property taxpayer information, NMSA 1978, § 7–38–4 (1991). Plaintiff then filed a complaint under the Inspection of Public Records Act, NMSA 1978, §§ 14–2–1 through–12 (1947, as amended through 1999). Following

the Assessor's answer, Plaintiff moved for summary judgment.

{3} The motion for summary judgment was supported by the following undisputed facts. Plaintiff wanted to inspect the property cards for the nine properties, and Plaintiff attached a sample of those property cards, showing the information they usually contained. The front of the card has spaces for the property address, code number, school district, owner's name and address, legal description, information on the type of streets and utility improvements to the property, value computations, and assessment summary. The back of the card has spaces for information such as is typically found on property appraisals-types and grades of foundation, walls, plumbing, heating, built-ins, and the like; square footage of the buildings, including a description of what parts are heated and plumbed; a summary of the appraisal calculation; and a space for a ground plan sketch. Both sides of the card have a space for notes. The ground plan sketch on the sample card shows a rough sketch of the outside walls of the building, with an indication of which part of the building is an unfinished garage. The Assessor provided Plaintiff with information about the nine properties through the Assessor's computer; this information was limited to the landowner's name, the property address and legal description, and the assessed valuation of the property. The Assessor would not make any other information available to Plaintiff, including copies of the property cards relating to these nine properties.

{4} The Assessor's response to the motion for summary judgment was supported by her affidavit, in which she said that she was familiar with the property cards used by her office and that the "cards in our office routinely contain confidential information in the form of sales price data, information regarding income, or diagrams or other depictions of the interior arrangement of buildings, alarm systems or electrical or plumbing systems or other notations which are not public records." She made no statements of any facts concerning the cards for the nine properties at issue in this case.

{5} After reviewing the pleadings and submissions of the parties and hearing oral argument, the district court granted summary judgment for Plaintiff. It ordered the Assessor to provide Plaintiff with the requested cards with any confidential information under Section 7–38–19(E) redacted. The Assessor appealed, and we assigned the case to our legal calendar. There is no information in the record in this case concerning what specific material is contained on the nine cards Plaintiff sought.

## CONTENTIONS OF THE PARTIES

{6} The Assessor's brief in chief takes the position that her affidavit, stating that property cards routinely have information listed in Section 7–38–19(E) on them, established that the property cards are excluded from being public records under a literal reading of Section 7–38–19(E). The Assessor's literal reading is based on the fact that the statute says that valuation records that contain any of the listed information "are not public records." *Id.* The Assessor supports her statutory construction argument with various policy arguments, including that taxpayers should be encouraged by confidentiality rules to openly provide all relevant information to taxing authorities and that statutes should be interpreted not to place undue administrative burdens on government.

{7} Plaintiff's answer brief essentially argues that the Assessor's literal reading is unreasonable because it would effectively nullify Section 7–38–19(D), which states that valuation records are public records. Plaintiff's argument is also supported by policy arguments, including that New Mexico has a public policy favoring openness of government and that the Assessor's administrative burden can be lessened by the Assessor's own internal practices.

{8} In the reply brief, for the first time, the Assessor does an about-face and contends that disclosure of information should depend on the type of information sought and not on the type of record sought and that the only type of information that should be disclosed is that defined in NMSA 1978, § 7–38–20(D) (1996) (stating what a notice of assessment should contain). The Assessor also contends in the reply brief for the first time that the individual property owners of the nine properties were indispensable parties.

## DISCUSSION

{9} We first discuss our general approach to the issues in this case and dispose of the issues raised for the first time in the reply brief. We next state the appropriate standards of review and then decide the issues in the context in which they were raised below.

{10} Two issues were raised for the first time in the reply brief. The first is a construction of the statute that limits disclosable information to that contained on notices of assessments, and the second is a contention that indispensable parties are not before this Court. We will not entertain either contention under the circumstances of this case. It appears to us that both are being made as afterthoughts, almost last-ditch efforts to avoid this Court's decision on the merits of the issues joined by the parties, both below and during the initial stages of this appeal. Appellate courts do not ordinarily consider matters raised for the first time in the reply brief. *See Hale v. Basin Motor Co.,* 110 N.M. 314, 321, 795 P.2d 1006, 1013 (1990).

{11} If the Assessor believes that a property owner may have an interest in intervening to oppose public access to certain information, the Assessor is free to notify the owner of the request for information and that if the owner has a concern, the owner may want to seek legal advice. In this case, on remand, the Assessor can request the district court for a stay pending the Assessor's notification to owners of the pendency of case, and its posture, and that the owner may wish to intervene during any stay of proceedings granted by the court. If the cards contain information the nine property owners believe to be confidential by law and not covered by this opinion, nothing in this opinion is intended to prohibit them from intervening in this case following our decision. Further, before the district court issues judgment on the mandate, nothing would prohibit it from further ordering redaction of the information on the property cards as appropriate.

{12} This case is before us on motion for summary judgment and involves statutory interpretation. Once a movant has made a prima facie showing that there is no dispute about the facts and that the movant is entitled to judgment as a matter of law, the burden shifts to the opposing party to demonstrate the existence of specific evidentiary facts that would require a trial on the merits or demonstrate that the undisputed facts do not require judgment as a matter of law in favor of movant. *Roth v. Thompson,* 113 N.M. 331, 334–35, 825 P.2d 1241, 1244–45 (1992). If there are no material facts in dispute, the appellate court reviews the legal determination of the district court de novo. *Self v. United Parcel Serv., Inc.,* 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582. Questions of statutory interpretation are also reviewed de novo. *N.M. Dep't of Labor v. A.C. Elec., Inc.,* 1998–NMCA–141, ¶ 8, 125 N.M. 779, 965 P.2d 363.

{13} As we stated at the outset, this case lies at the intersection of conflicting general rules of openness and confidentiality while at the same time being governed by a specific statute. We review the general rules and policies first, as they inform our construction of the specific statute.

{14} NMSA 1978, § 14–2–5 (1993) states:

Recognizing that a representative government is dependent upon an informed electorate, the intent of the legislature in enacting the Inspection of Public Records Act [this article] is to ensure, and it is declared to be the public policy of this state, that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of public officers and employees. It is the further intent of the legislature, and it is declared to be the public policy of this state, that to provide persons with such information is an essential function of a representative government and an integral part of the routine duties of public officers and employees.

Public records are given a broad definition. *See* NMSA 1978, § 14–2–6(E) (1993) (defining public records as "all documents, papers, letters, books, maps, tapes, photographs, recordings and other materials, regardless of physical form or characteristics, that are used, created, received, maintained or held by or on behalf of any public body and relate to public business, whether or not the records are required by law to be created or

maintained"). With certain exceptions, "[e]very person has a right to inspect any public records of this state." NMSA 1978, § 14–2–1(A) (1999). "The citizen's right to know is the rule and secrecy is the exception." *State. ex rel. Newsome v. Alarid,* 90 N.M. 790, 797, 568 P.2d 1236, 1243 (1977). In this case, the exception is contained in the statute, which provides an exception to public inspection "as otherwise provided by law." Section 14–2–1(A)(8).

■ {15} Chapter 7, Article 38 of the New Mexico statutes is devoted to the administration and enforcement of property taxes. Section 7–38–4 states an extremely broad general rule of confidentiality, together with criminal penalties for willfully disclosing information. Subsection A states:

Except as specifically authorized in this section or as otherwise provided by law, it is unlawful for any county assessor or any employee or former employee of a county assessor to reveal to any person other than county assessors or their employees or the secretary or an employee of the department any information furnished by the department about a specific property or property owner or any other information gained during that person's employment about a specific property or a property taxpayer gained as a result of a report or information furnished the department or a county assessor by a taxpayer or as a result of an examination of property or records of a taxpayer. Information described in this subsection may be released:

(1) that is limited to the information contained in those valuation records that are public records and the identity of the owner or person in possession of the property;

(2) to an authorized representative of another state; provided that the receiving state has entered into a written agreement with the department to use the information for tax purposes only;

(3) to a state district or appellate court or a federal court or county valuation protests board:

(a) in response to an order made in an action relating to taxation in which the state or a governmental unit is a party and in which the information is material to the inquiry; or

(b) in any action in which the department or a county is attempting to enforce the provisions of the Property Tax Code [Articles 35 to 38 of Chapter 7 NMSA 1978] or to collect a property tax or in any matter in which the taxpayer has put the taxpayer's own property valuation or liability for taxes at issue;

[ (4)-(7) if used for statistical purposes and the information is not identifiable; or to the property owner; or to the federal or multistate tax commission, if only used for tax purposes.]

The rule of confidentiality in tax matters is designed to encourage citizens to openly disclose all relevant information to the tax authorities to enable the government to fully and effectively collect all taxes to which the government is entitled. *See Meridian Oil, Inc. v. N.M. Taxation & Revenue Dep't,* 1996–NMCA–079, ¶ 20, 122 N.M. 131, 921 P.2d 327.

■ {16} We are thus confronted with conflicting policies, although with a confidentiality statute that specifically recognizes that valuation records are public records. Section 7–38–4(A)(1). Further, the valuation records statute, § 7–38–19, expressly recognizes that valuation records are public records except to the extent that they contain information regarding income, certain expenses, profits and losses relating to the property or owner, or diagrams of the interior arrangements of buildings or alarm, electrical, or plumbing systems. We reject at the outset the Assessor's argument that the presence of any of the above information on a property card renders the entire card excepted from being a public record. Such a literal reading of the statute is, in our view, unreasonable and would effect a nullification of the statutes providing that valuation records are, in general, public. *See State ex rel. Helman v. Gallegos,* 117 N.M. 346, 353, 871 P.2d 1352, 1359 (1994) (commenting on the dangers of reading statutes too literally); *Montoya v. Mentor Corp.,* 1996–NMCA–067, ¶ 19, 122 N.M. 2, 919 P.2d 410 (rejecting an interpretation of a statute that would make parts of it mere surplusage or meaningless).

{17} The district court did order that information specifically listed in Section 7–38–

19(E) be redacted from the property record cards ordered to be disclosed. Thus, the questions we must answer are whether the possible presence of other information on the cards makes the entire card confidential and whether the information in itself is confidential. There are two possible types of other information. First, there is standard appraisal information, such as we described in paragraph 3–e.g., square footage of buildings and types and grades of construction materials. Second, there is information that the Assessor claims sometimes exists on property cards, such as sales price data. In the briefs, the Assessor speculated that there might be information on why a particular sale price might have been low, such as that the owner had some disease or illness and needed to sell the property quickly. The Assessor claims that both of these types of information should be confidential pursuant to the policy that supports citizens' open and unguarded disclosure to the tax authorities of all relevant information.

{18} While we are not unsympathetic to the Assessor's point, in considering all of the statutes at issue, we cannot agree with it. The statutory scheme, as we see it, has the two conflicting general policies, but still contains a specific provision making valuation records public and only excepting certain types of information. We believe that the overall scheme evinces a legislative intent to have the general policy favoring openness in government control, at least as concerns any information on valuation records that is not the specific information listed in Section 7–38–19(E).

{19} Our decision is supported by several familiar rules of statutory construction. First, we consider statutes as a whole and do not read particular statutes in isolation when, in fairness, they should be read with other statutes on the same subject matter. *See N.M. Pub. Serv. Co. v. Pub. Util. Comm'n*, 1999–NMSC–040, ¶ 23, 128 N.M. 309, 992 P.2d 860 (stating that "two statutes covering the same subject matter should be harmonized and construed together when possible, in a way that facilitates their operation and the achievement of their goals") (internal quotations, emphasis, and citations omitted); *Quintana v. N.M. Dep't of Corr.*, 100 N.M. 224, 225, 668 P.2d 1101, 1102 (1983)

("All of the provisions of a statute, together with other statutes *in pari materia*, must be read together to ascertain the legislative intent."). Second, we give effect to specific over general statutes. *Lopez v. Barreras*, 77 N.M. 52, 54, 419 P.2d 251, 253 (1966). Finally, we give primary consideration to the language of the statute and, if plain and if not contraindicated by something lurking in another statute or the statutory history, we will give language its plain meaning. *See State ex rel. Helman*, 117 N.M. at 353, 871 P.2d at 1359.

{20} In this case, we take particular note of the purpose of the Inspection of Public Records Act being to provide the greatest possible information to the public about the acts of their officers. *See* § 14–2–5. County assessors in New Mexico are elected officials, *see* N.M. Const. art. X, § 2, and thus the public would have more than a passing interest in knowing about their performance, including the general duty to be fair and the specific, constitutional obligation "to take the necessary action to require, so far as possible, equality and uniformity" in taxation pursuant to N.M. Const. art. VIII, § 1. *Ernest W. Hahn, Inc. v. County Assessor*, 92 N.M. 609, 612, 592 P.2d 965, 968 (1978) (internal quotations and citation omitted). Disclosure to the public of valuation records, including appraisal-type information on them, would serve this purpose.

{21} We are not impressed with the Assessor's argument concerning the administrative burden involved in separating out Section 7–38–19(E) material from the valuation card otherwise required to be disclosed or the Assessor's fears that public employees or other proprietary organizations will "mine" public records for private information and then sell it. As for the administrative burden, the district court appears to have arrived at a workable compromise by ordering redaction of certain information. To the extent that the Assessor wishes to include this information on the property cards themselves, such information would have to be redacted. Of course, nothing would prohibit the Assessor from keeping such information in a separate place or on a confidential addendum to the property card, so long as the

addendum includes only information that is required to be kept confidential. As the Court indicated in *State ex rel. Newsome,* 90 N.M. at 798, 568 P.2d at 1244, administrative burden alone is not a sufficient reason for failure to make public records available for reasonable inspection. As for the fears of "mining," this presents a hypothetical circumstance that we leave for another day.

**CONCLUSION**

{22} For the foregoing reasons, the decision of the district court, ordering enforcement of the specific statute making valuation records public records except to the limited extent provided in Section 7–38–19(E), is affirmed.

{23} Plaintiff has requested his costs and attorney fees on appeal pursuant to NMSA 1978, § 14–2–12(D) (1993) (providing for an award of damages, costs, and attorney fees for a person successful in pursuing an action to enforce inspection under the act). *See also* Rule 12–403(B)(3) & (5) NMRA 2001 (permitting appellate court to award attorney fees where permitted by law and such other costs as the court deems proper). Upon motion filed within the time permitted by Rule 12–403(B)(3), accompanied by documentation of the time spent on appeal, this Court will make an appropriate award.

{24} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, Judge, JONATHAN B. SUTIN, Judge.